## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WARREN EASLEY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-2026** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **LISA HOLLIBAUGH,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment (Doc. No. 90) filed by Defendant Lisa Hollibaugh ("Hollibaugh"). The motion is fully briefed and ripe for disposition.

## I.    BACKGROUND

*Pro se* Plaintiff Warren Easley ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Forest in Marienville, Pennsylvania ("SCI Forest"), initiated the above-captioned action on November 26, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Hollibaugh and C.O. Gary Horton ("Horton"), raising claims arising from his incarceration at SCI Smithfield. (Doc. No. 1.) Plaintiff alleges that Defendant Horton violated his Eighth Amendment rights by using excessive force against him while Plaintiff was incarcerated in a psychiatric observation cell ("POC") at SCI Smithfield. (*Id.* at 3.) Specifically,

Plaintiff alleges that on March 19, 2018, Defendant Horton opened Plaintiff's wicket and began to strike Plaintiff repeatedly in the stomach.[1] (*Id.*)

With respect to Defendant Hollibaugh, Plaintiff alleges that on September 18, 2017, he was in his cell in front of the grievance box when Defendant Hollibaugh came to collect grievances. (*Id.* at 5.) Plaintiff asked Defendant Hollibaugh about "past untimely grievances he did not receive." (*Id.*) According to Plaintiff, Defendant Hollibaugh responded that she was "screwing Deputy Chism" and dared Plaintiff to write to her husband about it and that she would "press charges" if he did. (*Id.*) Plaintiff wrote a grievance about the incident. (*Id.*) He avers that Defendant Hollibaugh then issued a misconduct in retaliation for his decision to submit a grievance. (*Id.* at 6.) According to Plaintiff, he lost his privileges in the Behavior Management Unit ("BMU") program because of the false misconduct. (*Id.*) Based on the foregoing, Plaintiff alleges that Defendant Hollibaugh violated his First and Fourteenth Amendment rights and engaged in a civil conspiracy to

---

[1] Defendant Horton was served with the complaint on July 14, 2020. (Doc. No. 61.) Defendant Horton, however, has not appeared to defend the above-captioned action. On August 31, 2020, Plaintiff requested that the Clerk enter default against Defendant Horton. (Doc. No. 79.) Clerk's entry of default was entered on September 1, 2020. (Doc. No. 83.) Plaintiff also filed motions for default judgment against Defendant Horton. (Doc. Nos. 81, 88.) The Court denied as moot Plaintiff's first motion for default judgment (Doc. No. 95) and denied without prejudice his second motion for default judgment, noting that Plaintiff could renew his motion, with a brief in support, after his claims against Defendant Hollibaugh have been resolved (Doc. No. 96).

violate his rights.  (*Id.* at 5.)  Plaintiff requests declaratory and injunctive relief, as well as damages.  (*Id.* at 7.)

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963

3

F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.  *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  *White*,

826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[2]

The incident at issue occurred when Plaintiff was housed at SCI Smithfield. (Doc. No. 91 ¶ 2.)  At all relevant times, Defendant Hollibaugh was a Superintendent Assistant at SCI Smithfield.  (*Id.* ¶ 3.)

The Department of Corrections ("DOC")'s grievance policy "contains specific requirements for the inmate grievance process."  (*Id.* ¶ 4.)  Of note, an inmate must present a grievance "in a 'courteous manner' which is defined as 'written without the use of abusive language, profanities, name calling, etc.'"  (*Id.*

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*  Unless otherwise noted, the background herein is derived from Defendant Hollibaugh's Rule 56.1 statement of material facts.  (Doc. No. 91.)

Plaintiff filed a brief in opposition to the motion for summary judgment, as well as a statement of material facts and exhibits.  (Doc. Nos. 100, 101.)  However, Plaintiff's statement of disputed factual issues is not a response to Defendant Hollibaugh's statement of facts that complies with Local Rule 56.1.  Moreover, while a verified complaint may be treated as an affidavit in opposition to a motion for summary judgment, *see Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003), Plaintiff's complaint states only that it is "true and correct" and is not sworn under the penalty of perjury.  The Court, therefore, will not consider Plaintiff's complaint as evidence to rebut Defendant Hollibaugh's motion for summary judgment.  *See Liddick v. Tritt*, No. 1:14-cv-1813, 2017 WL 4211051, at *2 (M.D. Pa. Aug. 31, 2017).  Accordingly, the Court deems the facts set forth by Defendant Hollibaugh to be undisputed.  *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; *United States v. Alberto*, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

¶ 5.)  If an inmate is dissatisfied with a response to a grievance, he may appeal to the Facility Manager and then to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").  (*Id.* ¶ 6.)

On September 21, 2017, Defendant Hollibaugh issued Misconduct #B911132 "due to a missive she received that contained sexually explicit details of what [Plaintiff] would like to do to her."  (*Id.* ¶ 7.)  The missive was not signed, "but investigation into the handwriting revealed it to have been written by [Plaintiff]."  (*Id.* ¶ 8.)  Misconduct #B911132 "was a Class I misconduct which alleged charges of #25 Sexual Harassment, #33 Using Abusive Language, and #40 Unauthorized Use of the Mail or Telephone."  (*Id.* ¶ 9.)

On October 10, 2017, Plaintiff submitted a grievance, #701037, complaining of an alleged conversation he had with Defendant Hollibaugh.  (*Id.* ¶ 10.)  The grievance "contained alleged quotes from Hollibaugh such as: 'I am screwing Deputy Chism' and 'Did you write my husband about it yet . . . I dare you to write him.'"  (*Id.* ¶ 11.)  Defendant Hollibaugh rejected the grievance "because the allegations were wholly untrue and abusive, profane, and sexually harassing."  (*Id.* ¶ 12.)  Plaintiff appealed the rejection, which was initially upheld, but it was "later remanded for a response."  (*Id.* ¶¶ 13-14.)  The grievance was denied again and referred to the security office for investigation.  (*Id.* ¶ 15.)

7

Subsequently, Defendant Hollibaugh issued Misconduct #B911133 "in response to the false, abusive, and sexually harassing information written by [Plaintiff] in the grievance." (*Id.* ¶ 16.)  This misconduct "was a Class I misconduct which alleged charges of #25 Sexual Harassment, #33 Using Abusive Language, and #42 Lying to an Employee and claimed that she never made the statements to" Plaintiff.  (*Id.* ¶ 17.)  Plaintiff had a disciplinary hearing and was found guilty of all charges.  (*Id.* ¶ 18.)  Plaintiff appealed the misconduct, but it was upheld.  (*Id.* ¶ 19.) Superintendent Tice reviewed Plaintiff's second appeal and "upheld #42, Lying to an Employee."  (*Id.* ¶ 20.)  Chief Hearing Examiner Joseph H. Dupont denied Plaintiff's final appeal on December 7, 2017.  (*Id.* ¶ 21.)

## IV.   DISCUSSION

### A.    First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity.  *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials."  *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First

Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).   Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.   *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005).   Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.   *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).   The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related

to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Defendant Hollibaugh does not contest that Plaintiff engaged in protected activity and that he experienced adverse action. Rather, she asserts that she is entitled to summary judgment because Plaintiff "does not establish the necessary causal link between the protected conduct and the adverse action taken against him." (Doc. No. 92 at 11.) She also asserts that she "would have issued Misconduct B911133 regardless and strong penological interests support her decision." (*Id.*)

While causation may be stablished by direct or circumstantial evidence, "motivation is almost never subject to proof by direct evidence." *Watson*, 834 F.3d at 422. Thus, motivation is typically demonstrated by "evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* In the absence of such proof, "the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d

Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

In the instant case, Plaintiff suggests that nothing in the grievance he submitted was false. (Doc. No. 100 at 10.) The actual truthfulness of the grievance, however, is not at issue. What is at issue is whether the content of Plaintiff's grievance led Defendant Hollibaugh to issue the misconduct. DC-ADM 804 provides that grievances must be submitted in a "courteous manner," which is defined as "written without the use of abusive language, profanities, name calling, etc." (Doc. No. 91-1 at 3, 10, 39.) Plaintiff's grievance alleged that Defendant Hollibaugh stated, *inter alia*, that she was "screwing Deputy Chism." (*Id.* at 48.) The record reflects that Defendant Hollibaugh initially rejected the grievance, noting that it "contains sexually harassing/abusive language wording and you will be receiving a misconduct B911133." (*Id.* at 49.) In his declaration, Plaintiff avers that Defendant Hollibaugh issued the misconduct because she was aware that it would cause Plaintiff to "lose his phase" and certain privileges while in the BMU. (Doc. No. 100 at 8-9.) Plaintiff's speculations, however, are simply insufficient to create a genuine issue of material fact to survive summary judgment. *See Alexander v. Forr*, 297 F. App'x 102, 105 (3d Cir. 2008) (concluding that the district court properly granted summary judgment to defendants on inmate-plaintiff's retaliation

11

claim because the inmate's "allegations of causation typically amount[ed] to no more than unsupported assertions; indeed, he often appear[ed] to rely on his unwarranted belief that causation is self-evident"); *see also Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *16 (D.N.J. June 27, 2019) (noting that "[u]nsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment").

Even if Plaintiff sufficiently set forth a *prima facie* case, the Court concludes that Defendant Hollibaugh would still be entitled to summary judgment.  If a prisoner makes out a *prima facie* case, the burden shifts to prison officials to demonstrate that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.  The Court must "evaluate . . . 'the quantum of evidence' of the misconduct to determine whether the prison officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion . . . afford[ed] [to] them." *Watson*, 834 F.3d at 426.  The Third Circuit has noted that "most prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence." *Id.* at 425.

Upon review of the record, the Court concludes that there is no genuine issue of material fact regarding whether Defendant Hollibaugh would have issued the

misconduct.  The record sets forth that Misconduct #B911133 was not the first she issued to Plaintiff for using sexually harassing and abusive language toward her.  On September 21, 2017, Defendant Hollibaugh issued Misconduct #911132 to Plaintiff because she had received a letter containing sexually explicit details of what Plaintiff wanted to do to her.  (Doc. No. 91-2 at 5.)  She charged Plaintiff with sexual harassment, using abusive language, and unauthorized use of the mail.  (*Id.*)  Moreover, Plaintiff's own exhibits indicate that he "continually harassed and verbally abused Defendant Hollibaugh."  (Doc. No. 101 at 10.)  Furthermore, Defendant Hollibaugh requested a separation from Plaintiff "due to ongoing threats and harassment/sexual harassment that [she] endured . . . for months on end."  (*Id.* at 13-14.)  Quite simply, Plaintiff "was punished for disobeying prison rules." *Quiero v. Ott*, 799 F. App'x 144, 146 (3d Cir. 2020).  In the instant case, there is a sufficient quantum of evidence of misconduct to demonstrate that the issuance of Misconduct #B911133 was reasonably related to legitimate penological interests and that Plaintiff would have received the misconduct regardless of his grievance.  *See Watson*, 834 F.3d at 426.  The Court, therefore, will grant summary judgment to Defendant Hollibaugh with respect to Plaintiff's First Amendment retaliation claim.

### B.  Fourteenth Amendment Claims

In his complaint, Plaintiff vaguely suggests that Defendant Hollibaugh's actions violated his due process rights.  (Doc. No. 1 at 5.)  The Court agrees with Defendant Hollibaugh, however, that "this claim is never actually pled anywhere in the [c]omplaint." (Doc. No. 92 at 16.)  Defendant Hollibaugh addresses all three (3) due process claims in an abundance of caution (*id.* at 16-18); the Court, therefore, will do the same.

### 1.  Equal Protection

The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Traditionally, "[i]n order to establish a *prima facie* case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals." *See Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002).

However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim. *See Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008).  To maintain such a

14

claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. *See id.* "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Mosca v. Cole*, 217 F. App'x 158, 164 (3d Cir. 2007). When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not suffice. *See Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)).

As an initial matter, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001). In any event, there is no evidence before the Court that Defendant Hollibaugh treated Plaintiff differently than similarly situated individuals or that she purposefully discriminated against him. Accordingly, Defendant Hollibaugh is entitled to summary judgment to the extent Plaintiff avers that she violated his Fourteenth Amendment equal protection rights.

### 2.    Procedural Due Process

The Third Circuit has recognized that "[p]rison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002).  Such a procedural due process claim requires threshold proof that the inmate was engaged in constitutionally protected conduct.  *See id.* (citing *Sandin v. Conner*, 515 U.S. 472, 486 (1995)); *see also Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2002).  However, even if the discipline is initiated in retaliation for a protected act, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports.  *See Smith*, 293 F.3d at 653-54; *see also Thomas v. McCoy*, 467 F. App'x 94, 97 (3d Cir. 2012) ("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports.").

The record reflects that Plaintiff appeared before a Hearing Examiner on October 16, 2017 with respect to Misconduct #B911133.  (Doc. No. 91-2 at 10.)  The Hearing Examiner found him guilty of all charges.  (*Id.*)  Plaintiff appealed this decision to the Program Review Committee and his appeal was denied.  (*Id.* at 10-11.)  Plaintiff appealed to the Superintendent, who dismissed the charges of sexual

16

harassment and using abusive language but upheld the charge of lying to an employee. (*Id.* at 17.) Finally, Plaintiff appealed to the Chief Hearing Examiner, who denied his appeal. (*Id.* at 19.) Thus, even if Plaintiff were engaged in protected activity and Misconduct #B911133 was issued in retaliation for such activity, the record reflects that Plaintiff received an opportunity to challenge Misconduct #B911133. *See Smith*, 293 F.3d at 653-54; *see also Thomas*, 467 F. App'x at 97. Therefore, Defendant Hollibaugh is entitled to summary judgment as to Plaintiff's due process claim regarding Misconduct #B911133.

### 3. Substantive Due Process

To the extent that Plaintiff asserts a substantive due process claim based upon Defendant Hollibaugh's actions, he cannot do so. In adopting the "more-specific-provision-rule" established in *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998), the Third Circuit has noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" *See Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010). Here, any alleged due process violations fit squarely within Plaintiff's First Amendment retaliation claim, foreclosing any substantive due process claims he may seek to raise.

17

### C.      Civil Conspiracy Claim

To maintain an action for civil conspiracy under § 1983, a plaintiff must show "both the deprivation of a constitutional right and the existence of a conspiracy to violate that right." *Wodarski v. Erie Office of Children & Youth Servs.*, No. 10-292, 2012 WL 602933, at *4 (W.D. Pa. Feb. 23, 2012).  Moreover, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy.  The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F. Supp. 922, 928 (M.D. Pa. 1992).  The plaintiff's allegations "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.*  A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).  Moreover, "to successfully counter a motion for summary judgment, a plaintiff must provide specific evidence establishing that defendants agreed among themselves to act against him either unlawfully or for an unlawful purpose." *Payne v. Gordon*, 3:17-cv-1230, 2018 WL 3649026, at *11 (M.D. Pa. Aug. 1, 2018).

18

Here, the Court agrees with Defendant Hollibaugh that the record is devoid of evidence suggesting an agreement or plan created and executed by Defendant Hollibaugh that rises to the level of a conspiracy.  All Plaintiff has done is broadly claim "conspiracy." (Doc. No. 1.)  He has provided no evidence showing with whom Defendant Hollibaugh allegedly conspired and what the purpose of the agreement was.  Plaintiff's vague assertion fails to reasonably suggest the presence of an agreement or concerted activity involving Defendant Hollibaugh.  Without more, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation, which is not sufficient to demonstrate a genuine issue of fact as to the existence of an agreement designed to deny his constitutional rights. *See Young*, 926 F.2d at 1405 n.16.  Accordingly, the Court will grant summary judgment to Defendant Hollibaugh as to Plaintiff's civil conspiracy claim.

### D.   Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted." *See Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011). "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity." *Id.* Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *See al-Kidd*, 563 U.S. at 741. As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'" *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *See Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in *White v. Pauly*, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard. In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or

20

constitutional question beyond debate."[3]  *See id.* at 551 (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).  The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right.  *See id.* at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Defendant Hollibaugh asserts that she is entitled to qualified immunity "because there is no clearly established case law that prohibits a prison official from issuing a misconduct for harassing and false statements contained within a grievance."  (Doc. No. 92 at 20.)  The Court recognizes that it is clearly established that prison officials cannot retaliate against inmates for the act of filing a grievance.  *See Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981)).  The Court, however, cannot conclude that it is clearly established that an inmate has a right to use disrespectful and harassing language in a grievance.  It appears that as of 2017, the United States Court of Appeals for the Ninth Circuit held that "disrespectful language in a prisoner's

---

[3] There may be the rare "obvious case," however, where "a body of case law" is not necessary. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

grievance is itself protected activity under the First Amendment" and explained that threatening action beyond refusing to accept the grievance could constitute retaliatory action. *See Brodheim v. Cry*, 584 F.3d 1262, 1270-71 (9th Cir. 2009). Other courts, including the United States District Court for the Western District of Pennsylvania, have concluded that if an inmate provides false information or statements that violate prison regulations in a grievance, such language is not constitutionally protected and cannot support a retaliation claim. *See, e.g.*, *Coffee v. Burkhart*, No. 12-163, 2014 WL 1316100, at *8 (W.D. Pa. Mar. 28, 2014) (noting that "the inclusion of false statements within a grievance does not constitute constitutionally protected conduct"); *Davis v. Straub*, No. 1:07-cv-156, 2009 WL 4908433, at *3 (W.D. Mich. Dec. 11, 2009); *Curry v. Hall*, 839 F. Supp. 1437, 1441 (D. Or. 1993). The Court, therefore, cannot conclude that "existing precedent [has] placed the . . . constitutional question beyond debate." *White*, 137 S. Ct. at 551 (quoting *Mullenix*, 577 U.S. at 12). The Court, therefore, will grant Defendant Hollibaugh's motion for summary judgment on the basis that she is entitled to qualified immunity.

## V.    CONCLUSION

For the foregoing reasons, Defendant Hollibaugh's motion for summary judgment (Doc. No. 90) will be granted. As noted *supra*, Clerk's default has been

entered against Defendant Horton.  If Plaintiff wishes to pursue default judgment against him, Plaintiff must file a properly-supported motion for default judgment, with a brief in support thereof, within thirty (30) days of the date of this Memorandum.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: March 22, 2021