## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WARREN EASLEY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-2026** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **LISA HOLLIBAUGH,** *et al.*, | : | |
| **Defendants** | : | |

### MEMORANDUM

This matter is before the Court pursuant to *pro se* Plaintiff Warren Easley ("Plaintiff")'s motion to pursue damages (Doc. No. 118), as well as Defendant C.O. Gary Horton ("Horton")'s motion to set aside default (Doc. No. 129) and motion for leave of court to file answer and responsive pleadings out of time (Doc. No. 131).

## I.      BACKGROUND

Plaintiff, who is currently incarcerated at the State Correctional Institution Phoenix in Collegeville, Pennsylvania ("SCI Phoenix"), initiated the above-captioned action on November 26, 2019 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Hollibaugh and Horton, raising claims arising from his incarceration at SCI Smithfield.  (Doc. No. 1.)  Plaintiff alleges that Defendant Horton violated his Eighth Amendment rights by using excessive force against him while Plaintiff was incarcerated in a psychiatric observation cell ("POC") at SCI Smithfield.  (*Id.* at 3.)  Specifically, Plaintiff alleges that on March 19, 2018, he asked Defendant Horton to "contact a psych for him" to receive mental health

treatment. (*Id.*) Defendant Horton "began to get irritated" and verbally harass Plaintiff. (*Id.*) Plaintiff asked to speak to a ranking officer, at which point Defendant Horton opened Plaintiff's wicket and began to strike Plaintiff repeatedly in the stomach. (*Id.*) Plaintiff eventually put his arm in the wicket to prevent Defendant Horton from using OC spray. (*Id.* at 4.) Defendant Horton then slammed Plaintiff's arm and shoulder in the slot. (*Id.*) Plaintiff suffered stomach pain and diarrhea for days, and experienced "unbearable pain" in his stomach because of his prior surgeries due to a gunshot wound. (*Id.*) Plaintiff suffered cuts, abrasions, and swelling in his arm and shoulder, and he lost mobility for weeks. (*Id.*) Plaintiff avers that he filed a grievance regarding the use of excessive force, and that his grievance was upheld in his favor. (*Id.* at 5.) He maintains that Defendant Horton was suspended due to the use of excessive force. (*Id.*)

Defendant Horton was served with the complaint on July 14, 2020. (Doc. No. 61.) Defendant Horton, however, has not appeared to defend against the above-captioned action. On August 31, 2020, Plaintiff requested that the Clerk enter default against Defendant Horton. (Doc. No. 79.) Clerk's entry of default was entered on September 1, 2020. (Doc. No. 83.) On March 22, 2021, the Court granted Defendant Hollibaugh's motion for summary judgment and directed Plaintiff to file a properly-supported motion for default judgment within thirty (30) days if he

wished to pursue default judgment against Defendant Horton.  (Doc. Nos. 103, 104.)
A copy of Plaintiff's motion and brief in support thereof was served upon Defendant
Horton on April 1, 2021.  (Doc. No. 112.)  Defendant Horton did not file an
opposition to the motion.

In a Memorandum and Order dated April 30, 2021, the Court granted
Plaintiff's motion for default judgment and deferred the entry of judgment pending
the Court's damages determination.  (Doc. Nos. 114, 155.)  On May 10, 2021, the
Court scheduled a damages hearing for June 1, 2021.  (Doc. No. 117.)  Plaintiff
subsequently filed his motion to pursue damages, seeking $65,000.00 from
Defendant Horton.  (Doc. Nos. 118, 119, 120.)  On May 28, 2021, counsel appeared
on behalf of Defendant Horton and filed a motion to continue the damages hearing.
(Doc. Nos. 122, 123.)  On June 1, 2021, the Court granted the motion to continue
and scheduled the damages hearing for July 8, 2021.  (Doc. No. 125.)  Subsequently,
Defendant Horton filed a second motion to continue.  (Doc. No. 127.)  In an Order
dated June 30, 2021, the Court granted the motion and continued the hearing
generally.  (Doc. No. 128.)  Defendant Horton subsequently filed his motions to set
aside default and to file an answer and other responsive pleadings out of time.  (Doc.
Nos. 129, 130, 131, 132).  Plaintiff filed an opposition to the motion to set aside
default on July 29, 2021.  (Doc. No. 139.)

## II.   DISCUSSION

### A.   Motion to Set Aside Default

Pursuant to the Federal Rules of Civil Procedure, the Court "may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  Whether good cause exists is left to the sound discretion of the Court.  *Dizzley v. Friends Rehab. Program*, 202 F.R.D. 146, 147 (E.D. Pa. 2001) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194-95 (3d Cir. 1984)).  The United States Court of Appeals for the Third Circuit has noted that "it does not favor defaults, and that in a close case doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits." *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).  When determining whether good cause exists, courts consider the following factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct."  *Braverman Kaskey, P.C. v. Toidze*, 599 F. App'x 448, 453 (3d Cir. 2015) (quoting *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985)).

"Under Rule 55, the prejudice requirement compels [Plaintiff] to demonstrate that [his] claim would be materially impaired because of the loss of evidence, an increased potential for fraud or collusion, substantial reliance on the entry of default,

or other substantial factors." *Dizzley*, 202 F.R.D. at 147-48; *see also AccuWeather, Inc. v. Reuters Ltd.*, 779 F. Supp. 801, 802 (M.D. Pa. 1991) (noting that "[p]rejudice exists if circumstances have changed since entry of the default such that [the plaintiff's] ability to litigate [his] claim is now impaired in some material way or if relevant evidence has become lost or unavailable").  Plaintiff asserts that he has been prejudiced because the video of the incident is not available because DOC policy "states these videos are to be held for two years," and the incident occurred in 2018. (Doc. No. 139 at 7.)  Plaintiff also asserts that he "has lost the ability to find and remember witnesses."  (*Id.*)  Besides himself and Defendant Horton, however, Plaintiff does not suggest that any other individuals would have witnessed the incident.  Moreover, the grievance attached to Plaintiff's complaint indicates that his request for preservation of the video was upheld.  (Doc. No. 1 at 8.)  Nothing in the record suggests that the video was preserved for only two (2) years.  The Court, therefore, concludes that Plaintiff would not be prejudiced if the default were lifted.

With respect to the second factor, the moving party need only produce a defense that is "litigable," *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000), or "not 'facially unmeritorious,'" *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983)), in order to establish a meritorious defense for the purposes of setting

5

aside a default.  Here, Defendant Horton asserts several meritorious defenses.  He "denies he assaulted Plaintiff, denies he ever inflicted cruel and unusual punishment upon Plaintiff, denies he used excessive force on Plaintiff, and denies he injured Plaintiff in any way." (Doc. No. 130 at 11.)  He also asserts that the incident in question did not occur as Plaintiff sets it forth in his complaint and that Plaintiff actually assaulted him by grabbing his arm, pulling it through the slot, and scratching his arm. (*Id.* at 11-13.)

In response, Plaintiff reiterates the factual allegations of his complaint. (Doc. No. 139 at 5-6.)  He also asserts that the investigation by the DO determined that Defendant Horton used inappropriate force against Plaintiff. (*Id.* at 5.)  Defendant Horton, however, avers that he was "not contacted by SCI Smithfield regarding the grievance procedure, and that he did not testify, provide a statement, or participate in the procedure." (Doc. No. 130 at 4 n.2.)  Acceptance of Plaintiff's facts would require the Court to impermissibly make factual findings and fully disregard Defendant Horton's contrary factual allegations, and would require the Court to prematurely determine whether Defendant's defenses would ultimately prevail. *See Emcasco*, 834 F.2d at 74 (noting that the court "need not decide the legal issue at this time; it is sufficient that [the] proffered defense is not facially unmeritorious"). Thus, the second factor also weighs in favor of setting aside the default.

With respect to the third factor, "[t]o be 'culpable,' the conduct leading to the entry of default must have been willful, intentional, reckless or in bad faith.  More than mere negligence is required."  Defendant Horton asserts that his conduct was "neither willful nor done in bad faith to flaunt the authority of this Court."  (Doc. No. 130 at 14.)  He maintains that his "failure to file an Answer or participate in the litigation was primarily the result of debilitating depression he began experiencing after the March 19, 2018, assault by Plaintiff."  (*Id.*)  Such depression "impaired his ability to function on a daily basis."  (*Id.*)  He was ultimately admitted to the Veteran's Administration medical facility in Pittsburgh, Pennsylvania, on November 28, 2018 for depression and PTSD and was not discharged until January 2, 2019. (*Id.* at 15.)  Defendant Horton maintains that he "continued to experience depression, anxiety, and a lack of motivation through 2019 and beyond."  (*Id.*)  He asserts that his "continuing struggle with depression, anxiety, and lack of motivation impaired his ability to fully appreciate the significance of the Complaint as a formal legal document that required him to respond to the allegations."  (*Id.* at 16.)  This was "compounded by the fact he did not understand the nature and significance of a hand-written legal document."  (*Id.*)  Defendant Horton contends that "he did not receive any other documentation regarding this matter until he received the Court's Notice

of Hearing (Docket No. 117) stating he needed to appear in Court on June 1, 2021, at 9:00 a.m." (*Id.*)

In response, Plaintiff avers that Defendant Horton "ignored all documents in this civil matter as he was served the complaint 12 ½ months ago." (Doc. No. 139 at 2.)  Plaintiff recognizes that depression and PTSD are serious issues, but argues that Defendant Horton "shows no documents or mentions this depression or PTSD [a]ffected him in 2019." (*Id.* at 3.)  Plaintiff states that he is currently on four (4) medications and has been diagnosed with PTSD and severe depression, and that he has been "placed in [a] mental institution from a child to an adult." (*Id.*)  He asserts, however, that despite this, he "has still kept himself together to at least go to court." (*Id.*)  Overall, Plaintiff asserts that Defendant Horton "has not provided an adequate explanation as to his delay to answering [the] complaint from 2020-2021." (*Id.* at 4.)

This Court has previously recognized that "the failure to take any action whatsoever until approximately 10 months after service of the complaint . . . is evidence of neglect." *Schartner v. Copeland*, 59 F.R.D. 653, 656 (M.D. Pa. 1973). In *Copeland*, however, the Court also recognized that "[w]hile courts have become increasingly familiar with, and tolerant of, pro se documents . . ., laymen still equate 'legal' matters with formal, official-looking documents." *Id.* at 656-57.  Moreover,

Defendant Horton has not attached any documentation regarding his treatment for depression and PTSD after the incident with Plaintiff.  Upon review of the record, the Court concludes that whether Defendant Horton's neglect was inexcusable is a close question.  However, "[a]ny doubt should be resolved in favor of setting aside the entry of default."  *Id.* at 657; *see also Noble v. Amazon.com Servs., Inc.*, No. 3:20-cv-1876, 2021 WL 2117898, at *5 (M.D. Pa. May 25, 2021) (noting "the strong preference of courts to decide cases on their merits instead of on default").

In sum, the Court finds that good cause exists to grant Defendant Horton's motion to set aside default.  (Doc. No. 129.)  The Court, therefore, will vacate the Clerk's entry of default (Doc. No. 83), as well as its April 30, 2021 Memorandum and Order granting Plaintiff's motion for default judgment and deferring the entry of judgment pending a determination of damages (Doc. Nos. 114, 115).

### B.    Motion for Leave to File Out of Time

Defendant Horton has also sought leave to file an answer and other responsive pleadings out of time.  The Federal Rules of Civil Procedure provide that "[w]hen an act may or must be done within a specified time, the [C]ourt may, for god cause, extend the time on motion made after the time has expired if the party failed to ask because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).  The Court must consider the following factors when determining if excusable neglect exists: "the danger of

9

prejudice . . ., the length of delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993). Upon consideration of these factors, the Court concludes that, while there has been a lengthy delay in Defendant Horton's appearance in this matter, for the reasons discussed *supra*, there exists no danger of prejudice, Defendant Horton has demonstrated that the delay was caused by depression and PTSD, and that nothing in the record before the Court indicates that he has not acted in good faith. The Court, therefore, will grant Defendant Horton's motion for leave of Court to file out-of-time (Doc. No. 131) and direct him to file his answer within fourteen (14) days of the date of this Memorandum and accompanying Order.

## III.   CONCLUSION

For the foregoing reasons, Defendant Horton's motion to set aside default (Doc. No. 129) will be granted. The Clerk's entry of default (Doc. No. 83), as well as the Court's April 30, 2021 Memorandum and Order granting Plaintiff's motion for default judgment and deferring the entry of judgment pending a determination of damages (Doc. Nos. 114, 115), will be vacated. Defendant Horton's motion for leave to file out of time (Doc. No. 131) will be granted, and he will be directed to

file his answer within fourteen (14) days of the date of this Memorandum and accompanying Order.  Because the Court is setting aside the default, Plaintiff's motion to pursue damages (Doc. No. 118) will be denied at this time.  An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: August 10, 2021